UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FILED

OCT 09 2020 SH

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA,

v.

No. 17 CR 611-6
HON. THOMAS M. DURKIN

RONTRELL TURNIPSEED,
    Defendant.

DEFENDANT TURNIPSEED'S SENTENCING MEMORANDUM

Now comes the Defendant, Rontrell Turnipseed, Pro Se, and submits this sentencing memorandum for the Court's consideration and as a response to the Presentence Investigation Report and the Government's position on sentencing.

Defendant Rontrell Turnipseed ("Turnipseed") respectfully requests pursuant to 18 U.S.C. §3553(a), and the precedent set forth in Rita v. United States, 127 S.Ct. 2456 (2007) and United States v. Booker, 543 U.S. 220 (2005), that this Honorable Court impose a sentence below the suggested sentencing guideline range, followed by a period of supervised release. Such a sentence would be sufficient, but not greater than necessary, to comply with the purpose of sentencing set forth in 18 U.S.C. §3553(a).

    I.   Youth as a mitigating factor

This Court is asked to consider Mr. Turnipseed's age at the time of the offense. The guideline sentence recommendation ignores Mr. Turnipseed's youth and suggests a sentencing range that is greater

-1-

than necessary to achieve the purposes set forth in §3553. Turnipseed was 19-years old when he committed this crime. He has accepted responsibility for his actions and entered into a plea of guilty. In asking this Court to consider his age at the time of offense, Mr. Turnipseed does not suggest that his youth should be an excuse, nevertheless, the fact of his youth and consequent immaturity does offer a partial explanation into his conduct.

While Mr. Turnipseed was an adult in the eyes of the law, he certainly lacked the fully formed impulse control that otherwise would have dissuaded him from making choices that involved high risk and immediate reward. As he has matured, he has continued to gain insight into the long-term consequences of these choices. While his early life and situation may have impaired his ability to develop maturity and judgment, skills necessary to help him avoid criminal behavior, he is now older and has continued to gain insight into how his poor choices have exaggerated the difficulties in his life.

It is requested that this Court remain faithful to the considerations set forth in §3553(a), and recognize that the guideline calculations make no provision for differentiating between Mr. Turnipseed at the age of 19, and another defendant who is 45 or 50-years old, and who has fully matured. The Court is asked to consider the Defendant's youth. The defense suggests that Mr. Turnipseed's youth and immaturity are appropriate and relevant factors that this Court should weigh when it applies all the relevant §3553(a) considerations.

In Roper v. Simmons, 543 U.S. 551, 569 (2005), the Supreme Court stated that, "[a] lack of maturity and underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill considered actions and decisions." Citing Johnson v. Texas, 509 U.S. 350, 367 (1993). In justifying his opinion in Gall v. United States, 552 U.S. 38, Justice Stevens included a quote from a footnote that the District Judge used to justify his sentencing decision in Gall: "Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five...[T]he recent [National Institute of Health] report confirms that there is no bold line demarcating at what age a person reaches full maturity, While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of the defendant."

The Supreme Court again uderscored this theme in Johnson v. Texas, 509 U.S. 350 (1993), when it stated: our cases recognize that "youth is more than a chronological fact, it is a time and condition of life when a person may be susceptible to influence and psychological damage." (citing Eddings v. Oklahoma, 455 U.S. 104, 115 (1982). "A lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults, and are more understandable among the young. These qualities often result in impetuous and ill-consider the mitigating qualities of youth in the course of its deliberations over the appropriate sentence."

Johnson at 367.

Young, undeveloped brains are suggestible to the prospect of easy money. They are not yet fully formed and are deficient when assessing the risks and consequences of their actions.

Again, the defense suggestion that Mr. Turnipseed's youth should be considered is not advanced to justify his behavior, but only offered to put his conduct in its proper context and to help make sense of why he engaged in behavior that was reckless, impulsive and extremely dangerous. Consequently, when seeking to fashion a sentence that is both sufficient but not greater than necessary, a sentencing judge can consider if the condition that helped precipitate the criminal behavior continues to impair a defendant.

II. COVID-19 and its impact on any sentence of confinement

Title 18 U.S.C. §3553(a) contains an overarching provision instructing district courts to "impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing." As part of its sentencing obligations, this court must consider the need for the sentence imposed to provide just punishment for the offense.

To determine a just punishment for Mr. Turnipseed, this Court must consider how Defendant will serve his prison time. The current COVID-19 pandemic has altered the conditions of confinement. These changes make any sentence of confinement more severe. In its contemplation of what constitutes a just sentence, this Court should consider that Mr. Turnipseed will spend a large portion of his sentence in lockdown condition that are similar to solitary confinement. Since March 13, 2020, the Bureau of Prisons "modified its

operations" to respond to the spread of COVID-19, Action Plan (March 13, 2020). Individuals in every institution are secured in their assigned cells/quarters to decrease the spread of the virus. Family and friends have been prohibited from visiting. Programming is absent, save for selective UNICOR operations, and movement has basically ceased throughout most facilities. While the BOP website claims movement for showers, telephone and email access, commissary and laundry, in reality, even the most basic activities are not always allowed. Instead, conditions amount often to a total 24 hour lockdown.

Although conditions are somewhat less restrictive as of late September 2020, a return of the widespread COVID-19 virus will see a reinstitution of full instead of modified lockdown. Mr. Turnipseed will be prohibited from seeing his loved ones and unable to engage in rehabilitative or productive programming. Mr. Turnipseed will be subjected to the very real risk of contracting COVID-19. CDC guidance such as social distancing, is simply "impossible to achieve in our federal prisons" - particularly during a lockdown. (Centers for Disease Control and Prevention, Interim Guidance on Management of Corona Virus Disease 2019 (COVID-19) in Correctional and Detention Facilities, last visited May 28, 2020, recognizing that correctional and detention facilities present "unique challenges for control of COVID-19 transmission," due to the fact that individuals "live, work, eat, study and recreate within congregate environments).

Incarcerated individuals share bathrooms, sinks, showers, and telephones. They eat together and sleep in close proximity to each other. They lack the freedom to bathe regularly and are unable to

effectively disinfect their surroundings. Unsurprisingly, these conditions have fueled the spread of COVID-19 throughout the BOP facilities and over 70% of those tested by the BOP have the virus. (Michael Balsamo, Over 70% of the TEsted Inmates in Federal Prisons Have COVID-19, AP News, Apr. 29, 2020). On July 22, 2020, the BOP Website reported that the virus had breached 93 of the BOP facilities. Another factor to be contemplated in §3553 considerations is "the need for the sentence imposed....to provide defendant with needed educational and vocational training." The Court must consider the need for the sentence imposed to provide Mr. Turnipseed with rehabilitative services.

Rehabilitation is one of the fundamental purposes of sentencing. Unfortunately, rehabilitative services is currently impossible in the BOP. In an attempt to respond to COVID-19, the BOP has implemented a modified operation plan which limits social visits, inmate movement, suspended all volunteer visits, and educational services. This suspension of services also includes religious services. Regardless of what is stated, all BOP facilities now have the same lack of rehabilitative services due to the need for social distancing. Mr. Turnipseed will be unable to receive programming and rehabilitative services and instead will be confined to his assigned cell with no rehabilitative opportunities through educational and psychological programs. This modified lockdown which is being done through necessity, unfortunately, keeps the inmate from the benefits of the first step act, and therefore subjects him to a longer term of imprisonment.

Because of COVID-19, anytime Mr. Turnipseed spends in prison will necessarily be more severe than it ordinarily would. The Court should account for the oppressive nature of the BOP confinement during this pandemic by considering a sentence below the guideline range.

### III. Mr. Turnipseed was a Minor Participant Role in the RICO

The offense level is to be decreased two levels if the defendant was:

(1) a minor participant

(2) in any criminal activity

The offense level is to decreased by three levels in cases falling between "minimal and minor" participant. Mr. Turnipseed requests the Court grant him a minimum of a two-level departure as a minor participant and consider a three-level departure in his guideline levels.

The Commentary to the Guidelines describes a "minor participant" as one who is "less culpable than most other participants, but whose role could not be described as minimal." The Background section explains that the guideline on mitigating role provides adjustments for the defendant who plays a part that makes him "substantially less culpable than the average participant." The determination of "minimal" vs. "minor" is "heavily dependent" upon the facts of each case. The background section appears to place greater limitation on the use of the mitigating role adjustment than the language of the actual

guideline. The guideline does not require the defendant play a part that is "substantially less culpable" than the "average participant." There may be a fine line between minor and minimal participant in Mr. Turnipseed's case. See United States v. Encarnarcion, 914 F.2d 20 (1st Cir. 1990).

Although Mr. Turnipseed undoubtedly participated in the conspiracy, his part was neither necessary nor essential to the functioning of the group. See United States v. Hunte, 196 F.3d 687, 694 (7th Cir. 1999). However, even if the Court believes that Mr. Turnipseed played a necessary role, it does not definitively prevent that role from also being minor (emphasis by the court). See United States v. Compuzano-Benitez, 910 F.3d 982 (7th Cir. 2018), United States v. Panaigua-Verdugo, 537 F.3d 722, 725 (7th Cir. 2008). Under §2B1.1, application note 3(C), to determine whether a defendant is more or less culpable the court should consider such factors as, for example, the degree to which the defendant understood the scope and structure of the criminal venture, participated in the planning or organization, exercised decision-making authority, the acts he performed, and the degree to which he stood to benefit. The fact that a defendant "performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he is substantially less culpable than the average participant in the criminal activity." See also Compuzano-Benitez, supra.

Mr. Turnipseed reported to others in the group, he did not have organizational or planning authority, and he only stood to benefit

-8-

as a junior member of the venture. According to the presentence report Mr. Turnipseed participated in an attempted murder of Victim TS on August 31, 2012. At the time, Mr. Turnipseed was 19-years old. He was unfortunately involved in a shoot-out in which Victim TS sustained four gunshot wounds. Victim TS remained hospitalized for several hours, and for his participation, Mr. Turnipseed is truly sorry. It was the act of a young man. Mr. Turnipseed is less blameworthy than the average defendant in this conspiracy. (Please see letter to Hon. Thomas M. Durkin, attached).

Therefore, Mr. Turnipseed requests that the Court reduce his guideline range by at least 2-levels and possible 3-levels as a minor participant. A 2-level reduction would place the Defendant's total offense level at 24.

IV. <u>Mr. Turnipseed's Criminal History is Significantly Overstated.</u>

Assuming arguendo that the criminal history set forth in the PSR is accurate, it overstates the seriousness of the Defendant's record.

PSR Paragraph #'s 93, 94, 98 are for possession of cannabis with #s 93 and 94 were committed when the Defendant was a juvenile of 14 and 16, respectively. Possession of cannabis in the amount(s) held by Mr. Turnipseed on these occasions is no longer a crime in the state of Illinois. Therefore, any violation of probation in the subject cases should also not be considered for Criminal History purposes. Even when cannabis was illegal in Illinois, these are minor offenses brought about due to Mr. Turnipseed's substance abuse

problem as a youth. The marijuana was for personal use only.

When Mr. Turnipseed was 13, he was charged and convicted of reckless conduct in the reckless driving of an automobile. See PSR paragraphs 91 and 95. The PSR calculates one criminal history point for the reckless conduct at age 13 for recklessly driving an automobile for which no points were calculated. Therefore, this point as well should be excised from the PSR.

None of these criminal history points should be considered by the Court. As stated in the PSR, the Plea Agreement with the government calculates one Criminal History point (Category I), while the PSR calculates a criminal history score of six for a Category III. At least, the three cannabis possession points together with the two points for "committ[ing] the instant offense while under a criminal justice sentence for possession of cannabis." Therefore, Mr. Turnipseed's criminal history points should not exceed one, Category I.

Relevant Conduct

The government has alleged that Mr. Turnipseed participated an armed robbery.

After reviewing Defendant's Plea Agreement, he requested his attorney have the government remove his co-defendant's name from the agreement, since there were allegations that were incorrectly worded. The government then presented a second plea agreement, including an armed robbery allegation that was not included in the first Plea Agreement. If the government believed Mr. Turnipseed was involved in this robbery, why did it not mention it in the initial

Plea Agreement.

On November 19, 2019, Mr. Turnipseed and co-defendants were to attend an evidentiary hearing, but unlike Mr. Turnipseed's co-defendants, he was not called to court. Mr. Turnipseed's counsel informed him the government stated it was not prepared to "move forward"with Defendant as they did not have any witnesses available.

In a government interview of Willie J. Bryant, alleged victim of the October 23, 2010 armed robbery, Mr. Bryant described 4-robbers but not Mr. Turnipseed. This is why the government did not include Defendant in the evidentiary hearing. The government did not have a witness to identify Mr. Turnipseed in the robbery. Therefore, any mention of this robbery as relevant conduct or a predicate act committed by Mr. Turnipseed should be denied by the Court, and stricken from the record.

V. Individualized sentencing assessment and downward departure.

In United States v. Booker, the Supreme Court ruled that its Sixth Amendment holdings in Blakely v. Washington, 124 S.Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 455 (2000) applied to Federal Sentencing Guidelines. United States v. Booker, 125 S.Ct. 738, 756 (2005). The Court further held that the provisions of the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory or which rely upon the Guidelines' mandatory nature, were incompatible with its Sixth Amendment holding. Booker, 125 S.Ct. at 756. As a result, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." 125 S.Ct. at 757.

Largely as a result of later decisions in Gall v. United States, 128 S.Ct. 586 (2007) and Kimbrough v. United States, 128 S.Ct. 558 (2007), the sentencing options available to district court judges "have significantly broadened." Gall, 128 S.Ct. at 602. District courts are now free from any requirement that they mechanically adhere to the tight strictures of the guidelines, nor are courts required to even presume that the guidelines provide an appropriate sentence in a given cawe. Recognizing that the guidelines are simply a starting point in the sentencing calculation, this Court may depart downward from the Guideline Sentencing Range proposed by the Presentence Report.

In addition, Mr. Turnipseed was detained in Cook County Jail on what is Count-3, when he was first detained. Thus, he served an additional 47 days without federal credit. Mr. Turnipseed requests that this Court either subtract days to that which Defendant will serve or depart downward an additional 47 days to compensate for the time served in Cook County.

Acceptance of Responsibility

The Defendant has accepted, and continues to accept, responsibility for those acts which he has committed and which he believes accurately reflect his level of involvement in this case. Mr. Turnipseed expects to receive punishment for his unlawful conduct and is anxious to atone for those acts which he is actually responsible.

Mr. Turnipseed respectfully requests this Honorable Court consider a downward departure from the sentencing guideline range to take into account the above factors. It is essential that the Court take into account all of the 18 U.S.C. §3553(a) factors when determining

Mr. Turnipseed's sentence. A sentence sufficient, but not greater than necessary, for the Defendant would be 57 months' imprisonment.

Respectfully submitted,

*[signature]*

Rontrell Turnipseed
Defendant
USM # 52615-424
Metropolitan Correctional Center
71 W. Van Buren St.
Chicago, IL 60605

PERSONAL HISTORY

I was born in the Chicago area and raised by my mother without a father or older male figure present in my life. I have two older sisters and two younger brothers. Growing up in this environment has been difficult. It has been hard watching my mother struggle. There were times that we had no where to go and had to sleep in my mother's car or go house to house and stay with friends. This all happened after my great grandmother passed away and there was no one to look after us when my mom was working. So, my mother lost her job as she had to watch me and my sisters and brothers.

My mother's boyfriend was abusive and beat her. I had to listen to her cry as my brothers and sisters were in the other room. I was angry and helpless. I was supposed to be the man in the family, but I was a child of 9-years old. My mother would not let us call for help because she was afraid that the DCFS would take us and she would lose custody. She tried to save money so we could leave her abusive boyfriend. But, because he was helping her with the rent and food, and this kept us from having to go back to living in her car, she stayed and suffered for us.

I always told my sisters and brothers that one day I would help them leave all this struggle and pain. So, I probably became a product of my environment, unknowingly hanging out with the wrong people, but people that would help with money and food for my family.

Our neighborhood is affected with gangs, drugs, hunger, evictions, and relatives coming and going to the prisons and jails. This was not news headlines, this was our life in the neighborhood.

Personal History
Page 2

Life in the neighborhood was enough to dull your senses. I was constantly exposed to stresses of adulthood long before I was old enough to understand them. However, I have matured and gained insight into the long-term consequences of those bad choices I made during my teenage years. I am now older and have continued to gain insight into how my choices have exaggerated the difficulties in my life. I have been working on my GED, but unfortunately, all programs have been suspended at the MCC Chicago due to the COVID-19 pandemic. I hope that this Honorable Court will help me continue on this path and see fit to letting me go home soon and help my family live a good and normal life.

Respectfully submitted,

Rontrell Turnipseed

Rontrell Turnipseed #52615-424
Metropolitan Correctional Center
71 w Van Buren st
Chicago IL 60605

Legal
MAil

UnitedStates District Court
219 south Dearborn street
Chicago IL 60604


10/09/2020-4





METROPOLITAN CORRECTIONAL CENTER
71 W. VAN BUREN STREET
CHICAGO, IL 60605

The enclosed letter was processed through special mailing procedures for forwarding to you. This letter has neither been opened nor inspected. If the writer raises a question or problem over which this facility has jurisdiction, you may wish to return the materiel for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address.≅

Date: 10-02-2020

RECEIVED
2020 OCT -9 AM 11:58