UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RONTRELL TURNIPSEED | 17 CR 611-6<br><br>Judge Thomas M. Durkin |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S PRO SE MOTION FOR BOND PENDING SENTENCING**

The United States of America, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby submits its memorandum in opposition to defendant Rontrell Turnipseed's *pro se* Motion for Bond Pending Sentencing ("Motion"). Doc. #866. In seeking his release, defendant has again failed to meet his burden pursuant to 18 U.S.C. § 3143(a)(1). Therefore, this Court should deny defendant's Motion.

**I. BACKGROUND[1]**

On April 10, 2020, defendant filed a *pro se* emergency motion seeking compassionate release for reasons related to the COVID-19 pandemic, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Doc. #726. On May 4, 2020, the government responded. Doc. #731. On May 5, 2020, Judge Robert M. Dow, sitting as the emergency judge, denied defendant's emergency motion for release in a published order. Doc. #736. Notably, Judge Dow found that defendant had failed to meet either exception of 18 U.S.C. § 3143(a)(2)—a substantial likelihood that a motion for acquittal or new trial would be granted, or a recommendation by the government of no prison time for the offense)—which would warrant his release. *Id*. at 1. Furthermore, Judge Dow stated

---

[1] The detailed procedural history and earlier denials of defendant's motions for bond are outlined in depth at Document #731 and are incorporated here.

that defendant's "criminal history and the potential sentence h[e] faces foreclose any possibility of the Court making those findings by clear and convincing evidence." *Id.* at 2. Judge Dow specifically pointed to Judge Gilbert's detailed opinion (Doc. #189) in which Judge Gilbert previously found defendant *both* a danger to community and a risk of flight. *Id.*; Doc. #189.

At the status hearing on January 13, 2020, this Court requested the government respond to defendant's instant Motion and address several areas of defendant's arguments: (1) the approximate time-credit defendant may be given upon his sentencing; (2) defendant's criminal history may be overstated based on juvenile convictions; (3) his alleged minor role in the racketeering conspiracy; and (4) the time-frame of his social media posts that the government previously introduced in his prior bond hearings.[2]

## II. ARGUMENT

### A. Legal Standard

"Release or detention of a defendant pending sentence or appeal," governs where, as here, a defendant "has been found guilty of an offense and . . . is awaiting imposition or execution of sentence." 18 U.S.C. § 3143(a). Section 3143 has no exception for temporary release, unlike § 3142. Furthermore, § 3143 contains no cross-reference to § 3142(i)—despite, in other circumstances, specifically incorporating provisions of § 3142 (for example, in directing a district court to consider § 3142 in determining release or detention pending appeal by the

---

[2] The Court did not require the government to address the COVID-19 argument defendant made in the Motion. If the Court wishes that the government to address other issues it may have inadvertently missed in this filing, it will do so promptly upon the Court's request.

government, 18 U.S.C. § 3143(c)(2)). Here by contrast, Congress omitted any reference to § 3142(i) in § 3143.

Congress's omission makes sense given the post-conviction burden-shifting onto the defendant to justify release and the then-presumption in favor of detention. *See United States v. Hartsell*, 448 F. Supp. 3d 975, 977 (N.D. Ind. March 25, 2020) ("That Congress omitted a § 3142(i) counterpart in § 3143, at minimum, mirrors the design of this burden-shifting dichotomy.").[3] As noted above, the temporary release provision is found in § 3142(i), which addresses detention orders, and contemplates release "necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). In a post-conviction setting like this one, the need for release necessary for preparation of defendant's "defense" is significantly diminished, and "[a]ny tendency to read 'defense' broadly to include sentencing would be cabined by the statute, which would seems to cover trial but not sentencing post-guilty plea." *Id.*

    **B.    Defendant is a Danger to the Community, Poses a Risk of Flight, and is Unlikely to Have Overserved a Possible Prison Sentence**

        **1.    Defendant Remains a Danger to the Community and a Risk of Flight**

The government proffered its argument to Judge Gilbert in support of its motion for detention upon defendant's arrest. Furthermore, during two separate hearings, the government presented numerous social media photographs and videos

---

[3] In *Hartsell*, the court analyzed why the temporary release provision found in § 3142 did not apply to a post-conviction defendant awaiting sentencing, but ultimately declined to so hold in light of the government's concession that § 3142(i) applied there. *See Hartsell*, 448 F. Supp. 3d at 978.

3

defendant posted to his social media accounts in which he bragged about Labar Spann extorting individuals, posed possessing numerous and different high-powered firearms (which he was not legally permitted to possess), possessing large amounts of narcotics, and large amounts of cash. Those same arguments[4] are stronger now than they were pretrial as defendant has admitted his guilt in being a member of the Four Corner Hustlers and committed a near-lethal shooting in broad daylight with rival drug dealers. The government attaches to this filing, Exhibit A, a series of electronic files, which include the following:

1. A compilation of videos and images[5] taken from defendant's social media pages during and after defendant's arrest in this case. Most of those images and videos were not from many years prior to defendant's arrest, but as the Court accurately recalled, were from 2015, 2016 and 2017.

2. Calls and transcripts[6] of defendant, *while in custody and during the pendency of the detention hearing*, instructing his family members to remove those images and videos that the government introduced in his detention hearing from his social media pages, which led to the obstruction of justice charges in Count Six in the superseding indictment in this case; and a call in which defendant's girlfriend recounted how defendant physically assaulted her on a prior occasion.

---

[4] The government incorporates its oral arguments from the detention hearings of September 29, 2017 (Doc. ##78, 228), April 27, 2018 (Doc. #188), which led to Judge Gilbert's order detaining defendant (Doc. #189), and the hearing before this Court on January 28, 2020 (Doc. #689), which led to this Court's order on the same date denying release (Doc. # 690.

[5] These images and corresponding dates are also included in the Presentence Investigation Report (PSR). Doc. #692.

[6] The transcripts of these calls are also attached to the PSR.

3.  The transcript of the detention hearing before Judge Gilbert on September 29, 2017.

Defendant, when not in custody, revealed himself to be a true danger to the community as he is an admitted shooter of the Four Corner Hustlers. Nothing in defendant's instant Motion mitigates against his danger. Furthermore, the risk of flight is increased here as defendant has no pleaded guilty, rather than being presumed innocent. Both factors remain here and defendant has not met his burden under 18 U.S.C. § 3143, and he should remain detained.

### 2. Defendant is Not In Danger of Overserving a Guidelines Sentence

The government agrees with the PSR that defendant's adjusted offense level equals 28. The government also agrees with the PSR that, under the law, defendant's criminal history category points equal four and his criminal history category equals III. This is because defendant's criminal convictions, even though they occurred while he was a juvenile, fall within the admitted racketeering conspiracy timeframe in this case. Notably, three of defendant's four juvenile convictions involved distribution of narcotics, two of which were to undercover police officers. PSR paras. 92-94. According to the PSR, the advisory guidelines range equals 97 to 121 months' imprisonment. Had defendant's criminal history category equal I, as contemplated by the parties in the plea agreement,[7] defendant's advisory guidelines range would equal 78 to 97 months' imprisonment. Giving defendant further benefit, if he is

---

[7] Defendant's conviction for aggravated unlawful use of a weapon in 2010 was vacated in 2019, likely pursuant to *People v. Aguilar*, 2N.E.3d 321 (Ill. 2013), and no longer counts for criminal history points.

granted a reduction for acceptance of responsibility, the adjusted offense level would equal 25 and the guidelines range falls to 57 to 71 months' imprisonment. Further, in the event defendant is not held responsible for the armed robbery defendant is now contesting, the offense level drops to 23, which yields an advisory guidelines range of 46 to 57 months' imprisonment.

Defendant's theory, as outlined below, is based on several assumptions. To date, defendant has served approximately 40 months' imprisonment since his arrest in September 2017. According to the BOP personnel the government contacted, defendant's good time credit cannot be fully calculated until defendant is sentenced and BOP does a full analysis of his confinement history. However, pursuant to the First Step Act, defendant *may* be able to earn up to 54 days of good time credit per year of their imposed sentence. 18 U.S.C. § 3624(b).[8] Again, should defendant serve three years of presentence incarceration, defendant *may* be eligible for up to 162 days of good time credit, or approximately five and-a-half months. If defendant receives every possible benefit to the advisory guidelines range listed above, *and* the Court sentences defendant to the minimum of the advisory guidelines range, *then* defendant *may* have served almost all of his potential sentence. To be clear, good-time credit is not even guaranteed under the First Step Act. *See* FN 8.

---

[8] ". . . a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, *may* receive credit toward the service of the prisoner's sentence of up to 54 days for each year of the prisoner's sentence imposed by the court, *subject to determination by the Bureau of Prisons* that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." (emphasis added)

The possibility that defendant may be close to a possible time-served sentence is not the standard under § 3143, as the government will not be recommending a sentence that does not include imprisonment or agree to a time-served sentence. Furthermore, the government can represent to the Court that even if the Court calculates the guidelines range to be 97 to 121 months, the government is likely to ask for an above-guidelines sentence based on the § 3553(a) factors. Therefore, defendant's presupposition that he may be close to a time-served sentence, and that the Court would impose that sentence prior to a full sentencing hearing being conducted by the Court, is not grounds for release under § 3143.

### 3. Defendant Was Not a Minor Participant in the RICO Conspiracy

Defendant's argument that he was a minor participant in the Four Corner Hustlers enterprise rings hollow and should be rejected. In fact, it is the government's position that defendant played a larger role than he admitted to in the plea agreement. First, one of defendant's nicknames, as admitted in his plea agreement, is "Lil' Boss." That moniker, which other members of the enterprise repeatedly referred to him as, was not a name given to, or used by, a minor participant in an enterprise. Secondly, the structure of the Four Corner Hustlers is a loose one, not hierarchical as in other gangs like the Latin Kings, which have specific ranks. The Four Corner Hustlers enterprise is more of a flat organization that has Labar Spann at the top, and everyone else on the same level reporting directly to him. Here, defendant was placed in charge of specific drug territory and was armed to protect that territory. He also showed a proclivity for possessing firearms (as in his social media posts), and obviously using them to shoot to kill—which he almost did in his

admitted shootout in August of 2012. Defendant, as the Court is aware, was born in December of 1992, which made him 19 years old when he almost killed the teenage girl.

These actions are not those of a corner boy selling drugs, or a lookout for police, which would normally be a stronger argument for minor role. Rather, here, "Lil' Boss" was being groomed to take over this crew and was seen as the heir apparent by Labar Spann. This Court should not consider a possible minor role reduction as grounds for release.

### III. CONCLUSION

Accordingly, defendant has not met his burden under § 3143 mandating his release, nor has he mitigated the finding by Magistrate Judge Gilbert in 2018 (Doc. #189), this Court's finding in January 2020 (Doc. #690), or Judge Dow's finding in May 2020 (Doc. #736) that he is a danger to the community and risk of flight. For the foregoing reasons, the Court should deny defendant's Motion.

        Respectfully submitted,

        JOHN R. LAUSCH, JR.
        United States Attorney

By:   /s/ *Peter S. Salib*
       PETER S. SALIB
       TIMOTHY J. STORINO
       WILLIAM DUNNE
       KAVITHA J. BABU
       Assistant U.S. Attorneys
       219 South Dearborn St., Rm. 500
       Chicago, Illinois 60604
       (312) 353-5300

Dated: January 29, 2021