UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

RONTRELL TURNIPSEED

17 CR 611-6

Honorable Thomas M. Durkin

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits its sentencing memorandum with respect to defendant Rontrell Turnipseed.

In this submission, the government addresses why defendant should receive a sentence of 144 months' (or 12 years) imprisonment. Defendant was a violent and drug-dealing member of the Four Corner Hustlers racketeering enterprise and was rising in stature within the enterprise—even attaining the nickname "Lil' Boss." Defendant posted prolifically on social media with guns, drugs, and bragged about Labar Spann extorting victims for money. But most egregiously, defendant was jointly responsible for the August 2012 shooting of Victim TS, a then-15-year old girl who was walking home from school, and who was hit twice in the chest—and fortunately survived. A sentence of 144 months' imprisonment is appropriate.

## I.    PROCEDURAL BACKGROUND

On September 20, 2017, defendant was charged by way of an indictment with racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d) (Count One). Doc. #1. On April 24, 2019, defendant was charged in a superseding

indictment with Count One and an additional count of obstruction of justice, in violation of Title 18, United States Code, Section 1512(b)(2)(B). Doc. #405.

On August 14, 2019, defendant pleaded guilty to Count One. Doc. ##526, 527. On November 20, December 4, and December 17, 2019, the Court conducted an evidentiary hearing and received documents and stipulations, and heard arguments from the parties regarding the attempted murder of Victim TS, because codefendant Marchello Devine challenged that he was responsible for the shooting beyond a preponderance. Doc. ##641, 651, 664. The Court ruled on the evidentiary hearing evidence and made findings of fact for purposes of the Guidelines for co-defendant Marchello Devine. Doc. #666. That finding included that defendant and Marchello Devine were responsible for the attempted murder of Victim TS. Defendant's sentencing hearing is scheduled for March 8, 2021, at 10:00 a.m.

## II.    FACTUAL BACKGROUND[1]

Count One

Beginning no later than in or about the mid-1990s, and continuing until in or about 2017 in the Northern District of Illinois, Eastern Division, defendant knowingly conspired to conduct and participate in the conduct of the affairs of the Four Corner

---

[1] The facts are derived from the superseding indictment (Doc. #405), defendant's plea agreement (Doc. #527) and from the evidence introduced at the evidentiary hearing, as outlined above, including, the government's disc of the exhibits and evidence introduced at the hearing, a PowerPoint of the government's closing argument at the hearing (Doc. ##654, 666), and the Presentence Investigation Report. At sentencing, a district court may rely upon information contained in a PSR as long as the information is well supported and appears reliable. *United States v. Salinas*, 365 F.3d 582, 587 (7th Cir. 2004).

.

Hustlers street gang through a pattern of racketeering activity described in Count One of the superseding indictment, in violation of Title 18, United States Code, Section 1962(d).

The Four Corner Hustlers street gang constituted an ongoing organization whose leadership, membership, and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Four Corner Hustlers was a group of individuals associated in fact and therefore an "enterprise," as defined in Title 18, United States Code, Section 1961(d), that engaged in, and its activities affected, interstate commerce. As part of his membership in the Four Corner Hustlers, defendant agreed and knew that a co-conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Four Corner Hustlers street gang.

The purposes of the Four Corner Hustlers included, but were not limited to, the following: (a) enriching the leaders, members, and associates of the enterprise through the use of threats, intimidation, and violence, including, but not limited to, acts of murder, robbery, extortion, and the illegal trafficking of controlled substances; (b) promoting and enhancing the enterprise and its members' and associates' activities; (c) preserving and protecting the power, territory, operations, and proceeds of the enterprise through the use of threats, intimidation, and violence, including, but not limited to, acts of murder, attempted murder, aggravated battery with a firearm, and other acts of violence; (d) keeping victims and witnesses in fear of the enterprise and in fear of its leaders, members, and associates through acts and threats of

violence; and (e) taking steps designed to prevent law enforcement's detection of the enterprise's criminal activities.

Defendant acknowledges that the Four Corner Hustlers were an enterprise engaged in and affecting interstate commerce, including but not limited to the purchase, acquisition, transfer, use, maintenance, concealment, and disposal of firearms, including across state lines, and the purchase, sale, and distribution of illegal narcotics that had moved in or affected interstate commerce.

While he was a member, defendant knowingly and intentionally conspired with the leadership, members, and associates of the Four Corner Hustlers to engage in a pattern of racketeering activity for and on behalf of the Four Corner Hustlers. Defendant knew that the Four Corner Hustlers sold heroin and other controlled substances at various locations, including the west side of Chicago, where they would conduct drug transactions with customers on the street. Defendant knew that the gang used firearms to protect themselves and the areas where they sold drugs, which, at various times during the conspiracy, including the following areas: the 4300 block of West Wilcox and the 4300 block of West Jackson, all in Chicago. On April 20, 2010, defendant was in the area of the 4300 block of West Jackson selling heroin to customers on the street. Defendant was armed with a loaded firearm to protect himself and the gang's territory. When police officers arrived in the area, defendant walked to a nearby building where he placed the firearm into a mailbox in an effort to hide it from police. The police caught defendant recovered the firearm from the mailbox, and, from defendant's pants pocket, recovered 23 zip-lock baggies containing

a total of 2.3 grams of heroin that defendant intended to sell to customers on the street.

Defendant knew that the gang members maintained regular contact with each other to report on the gang's activities, including the status and progress of their drug sales, to reorder drugs for sale, and to warn members of police activity in the area where the gang sold controlled substances. More specifically, on October 24, 2012, defendant called co-defendant Labar Spann to report that someone had called the police and that the police responded with multiple police cars on the block where the Four Corner Hustlers sold drugs. Also, on November 12, 2012, defendant and co-defendant Labar Spann discussed the day's drug sales at a particular block controlled by the Four Corner Hustlers. During that call, defendant told co-defendant Labar Spann that had only "a couple of bags left" to sell, to which co-defendant Labar Spann offered defendant additional drugs and suggested that defendant allow the customers to sample the drugs first.

Defendant also knew that gang members protected their drug territory. For example, on August 31, 2012, defendant and co-defendant Marchello Devine told another drug dealer, Victim GD, that he/she could not sell drugs on the 4300 block of West Wilcox.

Furthermore, defendant knew that the Four Corner Hustlers were involved in drug trafficking and defendant agreed to participate in these activities, as demonstrated below. For example, during a court-authorized intercepted telephone call on November 12, 2012, defendant and co-defendant Labar Spann discussed how

defendant was almost out of narcotics and needed more narcotics to sell. During another court-authorized intercepted telephone call on October 24, 2012, defendant and co-defendant Spann discussed the presence of police officers in the area where they sold narcotics. In addition, defendant was willing to use violence for the Four Corner Hustlers and co-defendant Labar Spann, as detailed below with respect to the attempted murder of Victims TS.

Attempted murder of Victim TS on August 31, 2012

Defendant participated in the attempted murder of Victim TS on or about August 31, 2012. More specifically, on or about August 31, 2012, defendant and co-defendant Marchello Devine got into an argument with Victim GD and others near the 4300 block of West Wilcox. The argument related to the sale of narcotics on the 4300 block of West Wilcox. Defendant instructed Victim GD that he/she was not allowed to sell narcotics on that block. During the argument, defendant produced a handgun and began firing at Victim GD. Victim GD returned fire. During the shootout, Victim TS sustained four gunshot wounds, specifically two "through-and-through" wounds: one on her right side and one near her lower chest. Victim TS was in the hospital for several hours, required counseling once a week for two years, and still suffers from back pain.

Armed Robbery of Victims WB and JD on October 23, 2010

Defendant also participated in an armed robbery of Victims WB and JD on or about October 23, 2010. More specifically, on or about October 23, 2010, CPD officers responded to the area of the 5200 block of West Quincy Street in Chicago. Victims

WB and JD were robbed at gunpoint by a number of individuals. The victims' personal items were stolen from them during the robbery by defendant and five other individuals, at least two of whom were fellow members of the Four Corner Hustlers. Defendant and the other individuals who committed the robbery fled the scene in a vehicle and were all later apprehended. Officers recovered a .40 caliber firearm after one of the Four Corner Hustler members tossed the firearm to the ground and that member also had in his possession an iPhone and another cellular phone belonging to one of the victims. Defendant was apprehended inside a residence on the 4000 block of West Lexington. Defendant had in his possession a necklace with clear stones and a studded watch with clear stones both of which belonged to one of the victims.

<u>Distribution and possession with intent to distribute of heroin on April 20, 2010</u>

On April 20, 2010, CPD officers responded to the area of the 4300 block of West Jackson Boulevard, an area then-controlled by Four Corner Hustlers for the purposes of the distribution of narcotics. There, officers observed and approached defendant, who looked in their direction and then turned away and began to walk inside a building near 4310 West Jackson. Officers followed defendant into that building and observed him place a handgun in a mailbox inside the building. Officers detained defendant and recovered from the mailbox a loaded chrome 9mm Smith and Wesson Model #39-2 handgun, bearing serial number #A642389. Officers then recovered from defendant's right front pants pocket 23 zip-lock baggies each containing heroin. Defendant acknowledges that the heroin he possessed and intended to distribute on April 20, 2010 tested positive for approximately 2.3 grams of heroin.

7

Obstruction of justice as charged in Count Six on September 29, 2017

On or about September 29, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, defendant did corruptly persuade another person, namely Individual 1, Individual 2, and Individual 3, and attempted to do so, with intent to cause and induce Individual 1, Individual 2, and Individual 3 to destroy and conceal objects, namely photographs and videos maintained and stored in defendant's social media accounts with intent to impair the objects' availability for use in an official proceeding, namely *United States v. Labar Spann, et al.*, 17 CR 611, and Grand Jury number 13 GJ 1140, all in the United States District Court for the Northern District of Illinois, in violation of Title 18, United States Code, Section 1512(b)(2)(B).

More specifically, in or around September 2017, following the defendant's arrest, initial appearance, and subsequent detention hearing in the above-captioned matter, defendant instructed Individuals 1 and 3, during recorded telephone calls placed by the defendant from the Kankakee County Jail, to delete videos and photographs from defendant's social media accounts.

More specifically, on or about September 29, 2017, the defendant appeared before a United States Magistrate Judge in the Northern District of Illinois for a detention hearing. At the hearing, the government tendered to the defendant photographs obtained from the defendant's social media accounts, which depicted defendant with firearms, narcotics, and other members of the Four Corner Hustlers. Following that hearing, on the same day at approximately 6:13 p.m., during a recorded telephone call, defendant instructed Individual 1 to contact Individual 2 and

8

instruct Individual 2 to take down or delete videos from his social media account. Likewise, on the same day, at approximately 6:38 p.m., defendant instructed Individuals 1 and 3 (during the same call) to log in to his social media accounts, change the passwords, and delete the content. Defendant acknowledges that he acted with intent to impede and obstruct the government's RICO prosecution by attempting to destroy this evidence, and to make the items unavailable for use in this case.

## III. SENTENCING GUIDELINES RANGE

### A. Defendant Should Not Receive Acceptance of Responsibility

Despite defendant's guilty plea to the attempted murder of Victim TS, as outlined above, defendant now argues that it was merely an aggravated assault because he did not have the specific intent to kill anyone. Doc. #918 at 10-15. As a threshold matter, because defendant is now contesting that his conduct did not constitute an attempted murder, the government's position is that defendant is not entitled to acceptance of responsibility. Defendant was sworn in under penalty of perjury by this Court, represented by counsel before, during, and after the change of plea hearing, and colloquied extensively on the record by this Court. In no way did defendant argue with the offense conduct as being an attempted murder, nor did he contest the base offense level for this act (as he did with the armed robbery). The law in this circuit supports a denial of acceptance of responsibility. *See United States v. Akindele*, 84 F.3d 948, 957 (7th Cir. 1996), quoting *United States v. Cedano–Rojas,* 999 F.2d 1175, 1182 (7th Cir. 1993) ("'if a defendant denies the conduct and the court determines it to be true, the defendant cannot then claim that he has accepted responsibility for his actions.'"). "Simply entering a guilty plea prior to trial

does not automatically entitle a defendant for a reduction under § 3E1.1; the defendant bears the burden of demonstrating that he is entitled to the reduction by a preponderance of the evidence." *United States v. Seidling*, 737 F.3d 1155, 1162 (7th Cir. 2013). Defendant has failed to meet his burden here. Instead, defendant is trying to deny conduct he admitted to in writing and under oath to this Court. Accordingly, defendant should not receive acceptance of responsibility.

### B. Defendant's Actions in the Shooting of Victim TS is Attempted Murder and Not Aggravated Assault[2]

Defendant's conduct in the shooting of Victim TS does qualify as attempted murder under the guidelines, and not merely aggravated assault. Probation also agrees with this Court's finding from the evidentiary hearing and assigned the base offense level as 27. PSR at ¶ 51. Most critically, defendant argues that this attempted murder was not the attempted commission of first-degree murder or even second-degree murder. Arguably, based on the evidence presented at the evidentiary hearing, the government could have taken the position that the shooting on Wilcox could have been first degree murder.

The Pattern Criminal Jury Instructions of the Seventh Circuit list the elements for first degree murder (under 18 U.S.C. § 111) as follows:

1. Within the [special maritime; territorial jurisdiction] of the United States;
2. Defendant unlawfully killed [X];
3. With malice aforethought; and
4. With premeditation

---

[2] Defendant claim that the "*only*" evidence about this predicate act comes from defendant's plea agreement. Doc. #819 at 11. However, that is not accurate. The Court heard evidence about this attempted murder from live witnesses at the evidentiary hearing in November 2019, and that evidence can be properly considered here.

Pattern Criminal Jury Instructions of the Seventh Circuit, p. 403. Per the pattern, premeditation "is the element that distinguishes first degree murder from second degree murder." *Id*. *See United States v. Delaney*, 717 F.3d 553, 555-56 (7th Cir. 2013). "Premeditation requires planning and deliberation beyond the simple conscious intent to kill. Enough time must pass between the formation of the plan and fatal act for the defendant to have deliberated, and the defendant must have in fact, deliberated during that time." *Id*. at 411. The Seventh Circuit has elaborated that

> Premeditation requires planning and deliberation beyond the simple conscious intent to kill. There must be an appreciable elapse of time between the formation of a design and the fatal act, [citations omitted] although no specific period of time is required. [Citations omitted.] But more is required than the simple passage of time: the defendant must, in fact, have deliberated during that time period.
>
> . . .
>
> Premeditation may be proven by circumstantial evidence.

*Id*.; *United States v. Bell,* 819 F.3d at 319 (7th Cir. 2016) (internal citations omitted). Here, defendant got into an argument with Individual GD about who could sell which drugs in which drug territory. It was only *after* this argument that defendant began firing multiple rounds at Individual GD. At the same time, Marchello Devine also began firing. There was more than just passage of time, here, rather there was an argument and *then* defendant fired. This is not a drive-by shooting or firing a gun simply to "frighten or possibly cause bodily injury with a weapon." Doc. #918 at 12. If that was the case, then there wouldn't be 15 shell cases or bullets recovered by CPD

crime scene technicians in the area from which defendant and Marchello Devine were shooting. *See* Gvt. Exhs. 4303 W. Wilcox Maps 3-7.

In the alternative, and in order for the government to remain consistent in its positions with defendant and before this Court, the government is not seeking a base offense level of 33, pursuant to Guideline § 2A2.1(a)(1), but rather only a 27, pursuant to § 2A2.1(a)(2), which contemplates that the object of the act was *not* a first degree murder, but rather a second degree murder.

And in second degree murder, premeditation is not an element. Accordingly, the only elements the government needs to prove, and has done so before this Court, is that:

1. Within the [special maritime; territorial jurisdiction] of the United States;
2. Defendant unlawfully [attempted] to kill[] [X];
3. With malice aforethought;

Pattern Criminal Jury Instructions of the Seventh Circuit, p. 412 (modified). The Seventh Circuit defines "malice aforethought:"

> . . . if the person takes someone else's life deliberately and intentionally, or willfully acts with callous disregard for human life, knowing that a serious risk of death or serious bodily harm would result.

*Id.* at 410. There is no credible argument that can be made that defendant did not commit malice aforethought when he and Marchello Devine fired over a dozen shots at Individual GD, with two of them striking Victim TS. None of the cases cited by defendant from the 6th and 10th Circuits are analogous. And the one case from this circuit has facts very different from the ones here. Unlike in *Phillips*, defendant did not shoot a house in a drive-by shooting where a screen door hit a child in the face

and left her scarred. Defendant admitted he committed attempted murder, this Court later found defendant committed attempted murder, and Probation found the same. The base offense level should be 27, not 14.

### C. Defendant Was Not a Minor Participant in the RICO Conspiracy and Should Not Receive a Reduction in Offense Level for a Minor Role

Defendant also argues that he should receive a minor role reduction for his involvement in the racketeering enterprise. Doc. #819 at 6-10. As defendant cites in his sentencing memorandum, Application Notes 4 and 5 to Guidelines § 3B1.2(b) state that:

> . . . Subsection (a) applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the *least culpable of those involved in the conduct of a group*. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant.

> . . . Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal.

(emphasis added).

There is no credible argument that defendant was a minor participant of the RICO enterprise. Just comparing defendant to other defendants in this case, he is one of nine defendants charged in Count One. Of those nine defendants, only two defendants (Stevon Sims and DeAndre Spann) pleaded guilty to Count One without any acts of violence or obstruction of justice conduct put before the Court. Everyone else in Count One was involved with either shooting and injuring someone or shooting and killing someone. Here, Turnipseed almost killed Victim TS, could have killed

Individual GD, the person with Individual GD, and any other bystanders that day; dealt drugs using firearms to protect turf; obstructed justice *related to his detention hearing after his arrest in this case*; robbed multiple people with other Four Corner Hustlers (discussed below); and bragged about his role and lifestyle on social media—which involved numerous firearms (some with hollow-point bullets), large quantities of narcotics, and taunting extortion victims, and threatening to shoot extortion victims himself if they did not pay. There is nothing "minor" about someone willing to fire seven or eight rounds at a rival drug dealer in order to protect drug turf on behalf of the Four Corner Hustlers. Defendant also did not obtain the nickname "Lil' Boss" by accident, but rather because he was the heir apparent and had exhibited the *bona fides* to take on that role one day.

### D. Defendant Committed an Armed Robbery

The government agrees with Probation that defendant committed an armed robbery of three people, in concert with three other known Four Corner Hustlers. PSR ¶¶ 57-64. According to the CPD incident and arrest reports (attached to the PSR), defendant was with three other Four Corner Hustlers and robbed a group of individuals of various personal items. When police observed the van fleeing the scene of the robbery, officers observed defendant jump out of the vehicle, run, and try to hide. Additionally, defendant was trying to conceal numerous items, including a white metal necklace with a cross-shaped pendant and a wristwatch. Further, multiple individuals identified their personal items taken from them just minutes before defendant and his co-defendants were caught. While the government concedes nobody identified defendant prior to charges being filed, the victims' description of at

least one of the assailants matches Turnipseed—skinny with long dread locks—and nobody else that was caught by police. The robbery was committed at gunpoint and everyone was made to sit on the ground and give up their personal effects. This was a brazen robbery, and defendant's flight from the van, while also being caught with the items satisfies the government's burden beyond a preponderance.

As the Court is well aware, the burden beyond a preponderance can be met in a number of ways. "A sentencing judge is free to credit testimony that is totally uncorroborated, comes from an admitted liar, convicted felon, large scale drug dealing, paid government informant, or self-interested co-conspirator." *United States v. Isom*, 635 F.3d 904, 908 (7th Cir. 2011) (internal quotation marks and brackets omitted). What's more, "the testimony of one witness, even one arguably biased against the defendant, is sufficient to support a finding of fact[.]" *See United States v. Vold*, 66 F.3d 915, 920 (7th Cir. 1995)); *see also United States v. Zehm*, 217 F.3d 506, 514 (7th Cir. 2000); *United States v. Cedano-Rojas*, 999 F.2d 1175, 1180 (7th Cir. 1993); *United States v. Galbraith*, 200 F.3d 1006, 1012 (7th Cir. 2000). Instead, "so long as the information which the sentencing judge considers has sufficient indicia of reliability to support its probable accuracy, the information may properly be taken into account in passing sentence." *United States v. Lueddeke*, 908 F.2d 230, 234 (7th Cir.1990) (quoting *United States v. Miller*, 891 F.2d 1265, 1270 (7th Cir. 1989)). Because the confrontation clause does not apply,[3] the government need not call a

---

[3] *See United States v. Ghiassi*, 729 F.3d 690, 698 (7th Cir. 2013) (providing that "the Sixth Amendment's confrontation clause does not apply at sentencing, so the court was not

witness to testify, but instead may rely on unsworn statements given to law enforcement during an investigation. With respect to hearsay, error occurs only when a sentencing court considers hearsay evidence "devoid of any indicia of reliability." *United States v. Sanchez*, 507 F.3d 532, 538 (7th Cir. 2007). Even if the hearsay lacks inherent indicia of reliability, the reliability of the statement "can be established by internal consistency [and] corroborating evidence[.]" *Isom*, 635 F.3d at 908 (citing *United States v. Mays*, 593 F.3d 603, 608 (7th Cir. 2010); *United States v. Hankton*, 432 F.3d 779, 791 (7th Cir. 2005); *United States v. Thomas*, 280 F.3d 1149, 1154 (7th Cir.2002); *Galbraith*, 200 F.3d at 1013).

Here, the victims were not interested co-conspirators, or cooperating co-defendants, rather they were ordinary citizens that defendant and his co-defendants used to commit a crime of violence and opportunity. The statements made by the victims were corroborated almost immediately by police officers who found the van fleeing from the scene, a number of people jumping out of the van when they noticed the police, the recovery of the firearm a co-defendant tossed, and the positive identification of victims' items that were just taken. The statements by the victims were disinterested, reliable, and corroborated. Accordingly, the government agrees with Probation that defendant committed this gun-point robbery and it should be included in the calculation for his adjusted offense level.

---

precluded from relying on [the witness's] statements simply because [the witness] had not been subject to adversarial questioning").

### E.    Defendant's Criminal History

Probation has calculated that defendant's criminal history points equal six and category III. PSR ¶¶ 89-102. While defendant's criminal history points are accumulated for convictions as a juvenile, Probation is technically correct that the convictions are to be counted because they occurred during the charged timeframe of Count One. While defendant does argue that the convictions in the PSR are now between 12 and 15 years old, they are only between four and one year older than his admitted drug case in 2010 and the disputed armed robbery, also in 2010. In context of defendant's other criminal acts, those convictions do not overstate his criminal history. Especially since three of defendant's convictions involve distributing narcotics, with two of those distributions to an undercover police officer, and an additional conviction where he possessed over 100 grams of cannabis. PSR ¶¶ 92-94, 98.

Lastly, one of defendant's convictions no longer counts towards his criminal history as the conviction was vacated in 2019. PSR ¶ 113. However, defendant admitted the facts of that conviction as a predicate act where he was dealing drugs with a firearm (*see supra* on page 7). Defendant's criminal history would be even higher, without even mentioning that defendant has 20 arrests not leading to conviction from ages 12 to 24 (which was seven months prior to his arrest in this case). PSR ¶¶ 105-124.

Yet, for purposes of defendant's sentencing, and because the government did not contemplate defendant's juvenile convictions in the plea agreement, the

government will abide by its original calculation that defendant's criminal history category equals I.

### F.     Government's Calculation of the Advisory Guidelines Range

The government agrees with the Probation that the adjusted offense level equals 31. PSR ¶ 80. However, based on defendant contesting of the attempted murder offense level and his denial of the armed robbery, the government is opposing acceptance of responsibility. Therefore, the adjusted offense level should remain 31, and with a criminal history category of I, the advisory guidelines range should equal 108 to 135 months' imprisonment.

## IV.    ARGUMENT

For the reasons stated below, and pursuant to 18 U.S.C. § 3553(a), the government asks the Court to sentence defendant to 144 months' imprisonment.[4]

### A.     Nature and Circumstances of the Offense

Despite defendant's age, he was a feared and up and coming member in the Four Corner Hustlers street gang. The enterprise ravaged the neighborhood in which it operated on the west side of Chicago through drug sales, extortions, robberies, non-fatal shootings, and murder. And while defendant was a member of the Four Corner Hustlers, he became a close associate of another codefendant, Marchello Devine. Defendant distributed illegal narcotics for the enterprise. But the culmination of defendant's involvement in the Four Corner Hustlers enterprise was his role in the

---

[4] Unlike some co-defendants in this case, defendant has not served any time in state prison for his convictions. Therefore, he is only eligible to receive time credit for his pretrial detention in this case—which will be automatically deducted by BOP officials from the pronounced sentence by this Court as credit for time-served.

shootout on the 4300 block of West Wilcox. That dispute derived directly from the enterprise's narcotics trafficking in that area. The shootout occurred because the Four Corner Hustlers wanted to control drug sales to make money, and in order to enforce that control, defendant and co-defendant Marchello Devine were willing to shoot to kill. And that's what they almost did to Victim TS who was simply walking home from school a block away from the shooting.

One only needs to read the news about the violence that plagues this city on a daily basis. That violence is still fueled by drug sales and control of drug territory. The distribution of controlled substances, such as cocaine and heroin, leads to predictably dire consequences in the communities in which the drugs are sold and ingested. And when those sales were combined with the power of the Four Corner Hustlers—a street gang willing and ready to use violence to protect itself—it made for an often lethal combination. This is a perfect example of how dangerous and deadly these crimes are and how terribly they effect a neighborhood and individual people.

Victim TS was one block over from the shootout. She was walking away from the shooting and because she was listening to music, she could not hear the shots. In fact, Victim TS did not realize she was even hit until a neighbor yelled to her that she was shot. If Victim TS had happened to be a walking a few inches in one direction, one of the bullets could have pierced her heart and killed her. And this case would not be an attempted murder, but a completed one, with another life lost to senseless gun violence. Frankly, defendant is very fortunate that Victim TS wasn't struck in

the heart, was rushed to the hospital, and had her life saved by doctors and nurses who treated her. Otherwise, defendant would have been facing the possibility of the death penalty and a mandatory minimum of life imprisonment.

Additionally, defendant obstructed justice in this case. Once he heard the government's presentation of his social media profile, he spoke to two people and instructed them to remove the posts that were introduced in court. He did so *that same evening* as the hearing—which was entered and continued to a later date. He knew that those images and videos were damming, because it corroborated the violence of which he was capable. Even in prison, defendant tried to escape justice and not be held accountable. Accordingly, a sentence of 144 months' imprisonment is appropriate.

### B.    History and Characteristics of Defendant

Defendant's history and characteristics also support a sentence of 144 months' imprisonment. Defendant has a total of nine convictions, not including predicate act of April 20, 2010, that was vacated in 2019. PSR ¶¶ 91-99, 113. Defendant was in and out of the criminal justice system and only stopped committing alleged crimes when he was arrested and ordered detained in this case. PSR ¶¶ 105-124.

What heavily weighs in aggravation regarding defendant's history and characteristics is his use of social media. Defendant was not puffing or falsely bragging about his dangerousness, rather he was flaunting it and making it very well known that he was someone who would shoot to kill. Namely, two of the firearms in videos defendant posted on social media were Fabrique National Herstal ("FN") Five-Seven firearms. These firearms use 5.7x28mm ammunition, or the same type of

ammunition that can be used in M16 and AR-15 semi-automatic assault rifles. Combined with the hollow-point bullets defendant had loaded in the magazines, these weapons can appear as "regular" semi-automatic pistols (e.g. 9mm or .40 caliber), but instead, have the power to cause mass carnage and death. His posts are well documented in the record and have been referenced numerous times. Some of the images defendant posted are attached to the PSR. All of this activity weigh in aggravation for a sentence of 144 months' imprisonment.

Defendant did have an unstable upbringing as a child and struggled with a lack of a nuclear family. And that weighs in his favor as a mitigating factor. However, as defendant's mother stated, she "lost him to the streets" and defendant was hanging around with the "wrong people." Defendant's mother was trying to provide for him and yet he chose to join the Four Corner Hustlers. Defendant's choices were his own and the consequences of those actions culminated with his charges in this case.

Defendant allegedly only completed the ninth grade and never finished his high school education. Defendant had been supporting himself by selling drugs and later through a record deal. not contributing to society in a meaningful or even legal manner. A sentence of 144 months' imprisonment is warranted based on this 3553(a) factor.

### C. The Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence to Criminal Conduct

The need to promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct, also support a sentence within the advisory guidelines range. This Court must send a message to members of

the community who wish to become gang members, sell poison to citizens and shoot to kill to protect that illicit business and illicit enterprise. The scourge of drugs and guns go hand-in-hand, especially with the Four Corner Hustlers, and defendant embodied that ethos when he engaged in the shootout that injured, and fortunately did not kill, Victim TS.

As detailed above, defendant has shown no respect for the law through his numerous convictions, and subsequent violence in this case, and has only been stopped from committing crimes while incarcerated in this case. And yet while he was out of jail, he was getting arrested on numerous occasions by violating the law.

This Court can tell defendant that the sentence imposed will promote respect for the law, adequately punish him for his conduct and deter him and others from being in a street gang, selling drugs and shooting people. A sentence of 144 months' imprisonment will do that.

## V.     SUPERVISED RELEASE CONDITIONS

The government agrees with Probation's recommendations for the conditions of supervised release to be imposed as the facts underlying the offense and defendant's history and characteristics detailed in the PSR support the imposition of those conditions. *See* PSR pp. 28-33.

### A.     Mandatory Conditions

The government respectfully requests that defendant be required to comply with the following mandatory conditions set forth in 18 U.S.C. § 3583(d) and Guideline § 5D1.3(a):

- (1) Defendant shall not commit another federal, state or local offense. PSR ¶¶ 1-40, 91-124.

- (2) Defendant shall not unlawfully possess a controlled substance. PSR ¶¶ 34, 92-94, 98, 105, 106, 108, 111, 113, 145-150.

- (5) Defendant shall submit to the collection of a DNA sample from the defendant at the direction of the U.S. Probation Office, pursuant to 42 U.S.C. § 14135a(a).

- (6) Defendant shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on supervised release and at least two periodic tests thereafter, up to 104 periodic tests for use of a controlled substance during each year of supervised release. PSR ¶¶ 34, 92-94, 98, 105, 106, 108, 111, 113, 145-150.

## B. Discretionary Conditions

In addition, the government respectfully requests that defendant be required to comply with the following discretionary conditions permitted by 18 U.S.C. § 3583(d) and Guideline § 5D1.3(c), which serve to facilitate supervision by the probation officer, support defendant's rehabilitation and reintegration into society, and serve to promote deterrence and protect the public:

- (4) Defendant shall seek, and work conscientiously, at lawful employment or pursue conscientiously a course of study or vocational training that will equip defendant for employment, unless excused by the probation officer. PSR ¶¶ 153-154.

- (6) Defendant shall not knowingly meet or communicate with any person whom you know to be engaged, or planning to be engaged, in criminal activity and shall not: knowingly meet or communicate with the following persons: Labar Spann, Sammie Booker, Tremayne Thompson, Juhwun Foster, Marchello Devine, Keith Chatman, Stevon Sims, Deandre Spann, Mikal Jones, and Antonio Devine, and any potential victim or witness that was tendered in discovery.

- (7) Defendant shall refrain from excessive use of alcohol (defined as having a blood alcohol concentration greater than 0.08%), or any use of a narcotic drug or other controlled substance, as defined in § 102 of the

Controlled Substances Act (21 U.S.C. § 802), without a prescription by a licensed medical practitioner. PSR ¶¶ 145-150.

- (8) Defendant shall refrain from possession a firearm, destructive device, or other dangerous weapon. PSR ¶¶ 29-30, 31-33, 34, 40, 111, 113; 18 U.S.C. § 922(g)(1).

- (9) Defendant shall participate, at the direction of a probation officer, in a substance abuse treatment program, which may include urine testing up to a maximum of 104 tests per year. PSR ¶¶ 145-150.

- (14) Defendant shall not knowingly leave from the federal judicial district where he is being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago. PSR ¶¶ 131, 137.

- (15) Defendant shall report to the probation office in the federal judicial district to which defendant is released within 72 hours of his release from imprisonment. Defendant shall thereafter report to a probation officer at reasonable times as directed by the court or a probation officer. PSR p. 30.

- (16) Defendant shall permit the probation officer to visit the defendant at home, at work, at school, at a community service location, other reasonable location specified by a probation officer, and permit confiscation of any contraband in plain view of the probation officer. PSR ¶¶ 34, 92-94, 98, 105, 106, 108, 111, 113, 145-150.

- (17) Defendant shall notify the probation officer promptly, within 72 hours, of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. You shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege. PSR ¶¶ 137, 153-154.

- (18) Defendant shall notify the probation officer promptly, within 72 hours, if arrested or questioned by a law enforcement officer. PSR ¶¶ 89-124.

- (22) Defendant shall satisfy the special conditions discussed below.

24

- (23) Defendant shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. 1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. Defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner. PSR ¶ 40.

## C.  Special Conditions

Finally, the government respectfully requests that defendant be required to comply with the following special conditions permitted by 18 U.S.C. § 3583(d), which further support defendant's reintegration into society:

- (1) If defendant has not obtained a high school diploma or equivalent, he shall participate in a General Educational Development (GED) preparation course and seek to obtain a GED within the first year of supervision. PSR ¶¶ 151-152.

- (2) Defendant shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision. PSR ¶¶ 153-154.

- (3) If unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, defendant shall perform at least 20 hours of community service per week, not to exceed 400 hours, at the direction of the U.S. Probation Office until gainfully employed. PSR ¶¶ 153-154.

- (11) Defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court. PSR p. 33.

- (13) Defendant shall observe one Reentry Court session, as instructed by his probation officer. PSR p. 33

## VI. RESTITUTION

Pursuant to 18 U.S.C. § 3663A, defendant is required to pay restitution, jointly and severally with his codefendant, Marchello Devine, in the amount to be set by the Court at a later date for the injuries sustained and the treatment costs incurred by Victim TS (as an adult) or her parent or legal guardian (while she was a juvenile). Once the government provides the requested amount to the Court, the government requests the restitution be made due immediately, to be paid pursuant to a schedule set by the Court.

## VII. CONCLUSION

Considering the foregoing, the government respectfully requests that this Court impose a sentence of imprisonment of 144 months.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: *s/ Peter S. Salib*
PETER S. SALIB
TIMOTHY J. STORINO
WILLIAM DUNNE
KAVITHA J. BABU
Assistant United States Attorneys
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300

Dated: February 23, 2021